

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-06-541-CV

## IN THE MATTER OF THE GUARDIANSHIP OF
## JAVIER DELUNA, A MINOR CHILD

### On appeal from the Probate Court at Law
### of Hidalgo County, Texas.

## NUMBER 13-06-687-CV

## IN RE: COLUMBIA/ST. DAVID'S HEALTHCARE SYSTEM, L.P.
## D/B/A SOUTH AUSTIN HOSPITAL

### On Petition for Writ of Mandamus

# O P I N I O N

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Opinion by Justice Garza**

Appellant/relator Columbia/St. David's Healthcare System, L.P. d/b/a South Austin Hospital ("Columbia") brings this direct appeal and parallel petition for writ of mandamus challenging the probate court's refusal to approve a settlement agreement between

Columbia and appellees/real parties in interest Pedro and Deborah DeLuna ("the DeLunas"). The underlying case is a guardianship proceeding for the DeLunas' incapacitated son, Javier DeLuna. The settlement resolved the DeLunas' claim for personal injury damages against Columbia. By one issue, Columbia contends that the probate court abused its discretion in denying approval of its settlement agreement with the DeLunas. We dismiss the appeal for want of jurisdiction, and we conditionally grant the petition for writ of mandamus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Javier was born with severe brain damage on January 3, 1998, at South Austin Hospital. In August 1999, the DeLunas filed suit as next friends of Javier against Ramona Griffith Lopez, M.D., Pediatrics of South Austin, P.A. ("Pediatrics"), and Columbia. The suit, filed in the 98th Judicial District Court of Travis County, alleged that Javier's injuries were proximately caused by the negligence of Lopez, Pediatrics, and Columbia. Columbia filed a cross-claim against Lopez and Pediatrics, alleging that only Lopez and Pediatrics were liable for Javier's injuries.

In 2003, guardianship proceedings were initiated for Javier in Probate Court No. 1 of Hidalgo County, the DeLunas' county of residence. *See* TEX. PROB. CODE ANN. § 610(b)(1) (Vernon 2003) (stating that a guardianship proceeding for a minor may be brought in the county in which both of the minor's parents reside). The DeLunas were appointed and qualified by the probate court to be Javier's guardians on March 8, 2003.

Subsequently, the DeLunas settled their claims against Lopez and Pediatrics for one million dollars. The probate court approved this settlement and also approved the creation of a "Special Needs Trust" for Javier into which the settlement proceeds were deposited. *See id.* § 867(b) (Vernon Supp. 2007). The DeLunas' lawsuit against Columbia, however, remained pending in Travis County.

On April 1, 2003, the DeLunas filed a motion in the probate court to transfer the Travis County lawsuit to the probate court pursuant to section 608 of the Texas Probate

2

Code. *See id.* § 608 (Vernon Supp. 2007).[1] The probate court granted the DeLunas' motion for transfer on June 3, 2003. Columbia responded by filing a petition for writ of mandamus with the Texas Supreme Court.[2] Eventually, on November 18, 2005, the supreme court conditionally granted Columbia's petition, directing the probate court to vacate its order of transfer. *In re Columbia/St. David's Healthcare Sys., L.P.*, 178 S.W.3d 781, 782 (Tex. 2005) (orig. proceeding) (per curiam). Specifically, the supreme court noted that "section 15.007 of the Texas Civil Practice and Remedies Code directs that in a wrongful death or personal injury case, the venue provisions in Chapter 15 take precedence over the venue provisions of the Texas Probate Code."[3] *See* TEX. PROB. CODE ANN. § 608; TEX. CIV. PRAC. & REM. CODE ANN. § 15.007 (Vernon 2002) (providing that the venue provisions of chapter 15 of the civil practice and remedies code control in a personal injury case by or against an executor, administrator, or guardian as such), § 15.093 (Vernon 2002) ("A tort suit for damages may be brought in the county and precinct in which the injury was inflicted."). The Hidalgo County probate court complied with the supreme court's mandate by vacating its earlier order of transfer. The DeLunas' personal injury suit against Columbia remains pending in the Travis County district court.

In May 2006, after eight hours of mediation, the DeLuna and Columbia reached a settlement agreement. Under the agreement, one million dollars would be paid by

---

[1] Section 608 of the probate code provides:

> A judge of a statutory probate court, on the motion of a party to the action or of a person interested in a guardianship, may transfer to the judge's court from a district, county, or statutory court a cause of action appertaining to or incident to a guardianship estate that is pending in the statutory probate court or a cause of action relating to a guardianship in which a guardian, ward, or proposed ward in a guardianship pending in the statutory probate court is a party and may consolidate the transferred cause of action with the other proceedings in the statutory probate court relating to the guardianship estate.

TEX. PROB. CODE ANN. § 608 (Vernon Supp. 2007).

[2] Columbia also filed a motion to stay the order of transfer and a motion to continue the proceedings in the Hidalgo County probate court. The probate court denied Columbia's motion to stay the order of transfer on September 3, 2003 and denied its motion for continuance on November 17, 2003.

[3] The supreme court noted that Columbia and DeLuna agreed upon this conclusion. *See In re Columbia/St. David's Healthcare Sys., L.P.*, 178 S.W.3d 781, 782 (Tex. 2005) (orig. proceeding) (per curiam).

Columbia to Javier's special needs trust, less estate expenses and attorney's fees.[4] The DeLunas and Columbia each filed motions requesting that the probate court approve the settlement agreement pursuant to section 774 of the probate code. *See* TEX. PROB. CODE ANN. § 774(a)(4) (Vernon Supp. 2007) (permitting a guardian to "make a compromise or a settlement in relation to property or a claim in dispute or litigation" only "if authorized by an order of court."). The probate court appointed a guardian ad litem to independently evaluate the settlement with regard to Javier's best interests. A hearing was held on the motion on September 6, 2006, at which Columbia, the DeLunas, and the guardian ad litem recommended that the settlement agreement be approved. Nevertheless, the probate court denied the motion by written order on September 8, 2006. Columbia then filed its notice of appeal. This appeal and petition for writ of mandamus ensued.

## II. JURISDICTION

Columbia filed both a direct appeal and a petition for writ of mandamus with this Court, contending first that this Court has appellate jurisdiction to review the probate court's order denying Columbia's motion to approve the settlement agreement, and requesting mandamus relief in the alternative. We disagree that we have jurisdiction to review the probate court's order on direct appeal.

The question of jurisdiction is a legal question that we review de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Generally, an appeal can only be brought by a named party to a suit. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 754 (Tex. 2003). Although there are exceptions to the general rule,[5] Columbia does not assert any such exception on appeal. We therefore conclude that

---

[4] The record reflects that the net amount to be paid to Javier's trust by Columbia under the terms of the settlement agreement, after deductions for estate expenses and attorney's fees, was $559,962.05.

[5] *See Motor Vehicle Bd. of the Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d 108, 110 (Tex. 1999) (noting that an exception to the general rule exists when the appellant is deemed to be a party under the doctrine of virtual representation and that "[t]o claim virtual representation, an appellant must show that: (1) it is bound by the judgment; (2) its privity of estate, title, or interest appears from the record; and (3) there is an identity of interest between the appellant and a party to the judgment.")

because Columbia was not a party to the guardianship proceeding, it has no standing to appeal the probate court's judgment.

We have, however, held that a party does not need to be a named party in the underlying litigation in order to seek mandamus relief. *United Oil & Minerals, Inc. v. Costilla Energy, Inc.*, 1 S.W.3d 840, 844 (Tex. App.–Corpus Christi 1999, pet dism'd). To be entitled to seek mandamus relief, the party must merely have a justiciable interest in the underlying controversy. *Id.* (citing *Terrazas v. Ramirez*, 829 S.W.2d 712, 723 (Tex. 1991) (orig. proceeding)). A justiciable controversy is one that is definite and concrete and impacts the legal relations of parties having adverse legal interests. *In the Interest of C.T.H.*, 112 S.W.3d 262, 265-66 (Tex. App.–Beaumont 2003, no pet.) (citing *City of Fort Worth v. Pastusek Indus., Inc.*, 48 S.W.3d 366, 371 (Tex. App.–Fort Worth 2001, no pet.)). Here, the probate court's ruling clearly and concretely impacted the legal relationship between Columbia and the DeLunas. We conclude that Columbia has a sufficient stake in the judgment issued by the probate court to allow it to bring a petition for writ of mandamus. *See United Oil & Minerals, Inc.*, 1 S.W.3d at 844 (finding that a party that was non-suited prior to trial had a sufficient stake in the controversy to be allowed to bring a petition for writ of mandamus).

## III. DISCUSSION

### A. Standard of Review

To establish its entitlement to mandamus relief, Columbia is required to show a clear abuse of discretion by the trial court for which there is no adequate appellate remedy. *See, e.g., In re AutoNation, Inc.*, 228 S.W.3d 663, 667 (Tex. 2007) (orig. proceeding); *see also Epstein v. Hutchison*, No. 01-03-00279-CV, 2004 Tex. App. LEXIS 10390, at *3 (Tex. App.–Houston [1st Dist.] Nov. 18, 2004, no pet.) (mem. op.) ("We review a trial court's approval of a settlement involving a ward for abuse of discretion."). Having already determined that Columbia has no standing to bring a direct appeal, we conclude that Columbia has no adequate appellate remedy. We therefore turn to the issue of whether

5

the probate court's decision to deny approval of the settlement agreement was a clear abuse of discretion.

A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding); *In re Guerra*, 235 S.W.3d 392, 403 (Tex. App.–Corpus Christi 2007, orig. proceeding); *see In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (per curiam) (stating that mandamus will issue when the trial court "acts in an unreasonable or arbitrary manner or, stated differently, when it acts without reference to guiding rules and principles."). With respect to factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker*, 827 S.W.2d at 839-40. The relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 840. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.*

Courts have not elucidated specific factors that must be examined to determine whether a court has clearly abused its discretion in approving or disapproving a settlement agreement in the guardianship context. Columbia urges us instead to review factors that courts generally consider when reviewing approvals of settlement agreements in other types of cases. For instance, when deciding whether to approve a settlement in a class action lawsuit, courts consider the following factors:

> (1) [W]hether the settlement was negotiated at arm's length or was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings, including the status of discovery; (4) the factual and legal obstacles that could prevent the plaintiffs from prevailing on the merits; (5) the possible range of recovery and the certainty of damages; [and] (6) the respective opinions of the participants, including class counsel, class representatives, and the absent class members.

*Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 955 (Tex. 1996). In the context of a shareholder derivative lawsuit, courts are to approve settlement agreements only if the court determines that "there has been no fraud or collusion in arriving at the settlement

6

agreement, and that it is fair, reasonable, and adequate." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). Finally, in a bankruptcy case, approval for the settlement of a claim should be given by the court only if the settlement is:

> [F]air and equitable and in the best interest of the estate . . . comparing the terms of the compromise with the likely rewards of litigation. . . . In particular[, the court] must evaluate and set forth in a comprehensible fashion: (1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law; (2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and (3) All other factors bearing on the wisdom of the compromise.

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 355-56 (5th Cir. 1997). While these factors are not necessarily controlling in the instant guardianship case, they are instructive to our determination of whether the probate court acted in an unreasonable or arbitrary manner, or without reference to any guiding rules or principles. *See In re Colonial Pipeline Co.*, 968 S.W.2d at 941; *Walker*, 827 S.W.2d at 840; *In re Guerra*, 235 S.W.3d at 403.

**B.    Analysis**

We note first that the public policy of both our state and federal governments favors agreements to resolve legal disputes through voluntary settlement procedures. *Citgo Ref. & Mktg., Inc. v. Garza*, 187 S.W.3d 45, 61 (Tex. App.–Corpus Christi 2005, no pet.) (citing *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 267 (Tex. 1992)); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 154.002 (Vernon 2005) ("It is the policy of this state to encourage the peaceable resolution of disputes, with special consideration to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children, and the early settlement of pending litigation through voluntary settlement procedures.").

In reviewing the probate court's decision using the factors applicable to the approval of settlement agreements in other contexts, and keeping in mind the clear public policy of this state, it is apparent that the probate court's ruling was arbitrary and unreasonable. *See Walker*, 827 S.W.2d at 840; *In re Guerra*, 235 S.W.3d at 403. The record reveals that

7

the settlement agreement was negotiated at arm's length; that there was no fraud or collusion in its negotiation; that there were several significant obstacles to the DeLunas' recovery at trial in Travis County; that an award of damages against Columbia at trial was far from certain; and that the parties involved—including the guardian ad litem appointed by the court specifically for this purpose—were unanimous in their opinion that the settlement was in Javier's best interests. *See Cajun Elec. Power Coop.*, 119 F.3d at 355-56; *Maher*, 714 F.2d at 755; *Bloyed*, 916 S.W.2d at 955.

With regard to the process of arriving at the agreement, the record is clear that the parties were well informed, represented competently, and fully advised of the implications of their settlement. They reached an agreement only after eight hours of mediation. There was no indication that the DeLunas, or Columbia for that matter, had been pressured or were under any sort of duress in arriving at the agreement.

As to the DeLunas' chances of recovery at trial, Columbia had presented a viable defense to their liability. In its fourth amended original answer,[6] Columbia asserted that the damages suffered by Javier did not result from the incident that formed the basis of the DeLunas' suit. Rather, Columbia contended that Javier's present condition was the result of:

> *[I]n utero* events and . . . complications of prematurity, including but not limited to placental insufficiency, hypoxic events in utero, placenta previa, placental abruption, severe hyaline membrane disease, patent ductus arteriosus and the treatment thereof, hypotension, genetic abnormalities, severe respiratory distress syndrome, anemia of prematurity and apnea of prematurity.

Columbia also asserted that Deborah DeLuna failed to follow the advice and instruction of her physicians and was therefore contributorily negligent. Further, Columbia asserted a cross-claim against Lopez and Pediatrics, in order to determine the percentage of liability attributable to those parties. It was not at all clear that the DeLunas would obtain a favorable verdict at trial, and even if they did obtain such a verdict, it was not clear that

---

[6] Columbia filed its fourth amended original answer to the DeLunas' lawsuit in the Hidalgo County probate court while their request for mandamus relief from the Texas Supreme Court was still pending.

8

Columbia would be held liable for an amount exceeding the amount for which Lopez and Pediatrics had settled.

The DeLunas' trial counsel emphasized that he had "mock tried" the case twice—once before a mock jury in Harris County and once before a mock jury in Travis County. The results were favorable to the DeLunas in Harris County, but unfavorable in Travis County, and this was why the DeLunas had sought to transfer the personal injury case away from the Travis County district court to the Hidalgo County probate court. However, the supreme court's decision to grant mandamus relief to Columbia established that, if the case were to be tried, it would be tried in Travis County. *See In re Columbia/St. David's Healthcare Sys.,* 178 S.W.3d at 782. At the hearing on the motions to approve the settlement agreement, the DeLunas' trial counsel made it clear that the supreme court's ruling presented a substantial obstacle to the DeLuna's eventual recovery, stating that "the reality of a Travis County, highly educated, very professional, UT professor jury pool is something that weighs heavily on my mind."

We are cognizant that the factors applicable in other contexts are not necessarily determinative of whether the probate court abused its discretion here. However, regardless of the consideration of those specific factors, the record shows that the probate court's decision to deny approval of the settlement agreement was without reference to any guiding rules or principles. *See In re Colonial Pipeline Co.*, 968 S.W.2d at 941. The court appeared to rest its decision primarily on two bases. First, the court ruminated on the possibility that Medicaid, though currently covering most of Javier's medical expenses, might not continue to be in existence for the duration of Javier's lifetime. The record, however, is devoid of any argument or fact that would allow us to consider this to be anything more than a theoretical possibility.

The second apparent basis of the court's decision was the fact that Columbia's insurance policy had a liability limit of $12 million, which of course was considerably higher than the amount that would be paid out according to the settlement. Crucially, however,

9

the court did not appear to consider whether or not the specific facts of this case warranted a recovery of less than that limit. Instead, the court referred generally to its reluctance to approve of any personal injury settlements in guardianship cases, without regard to the reasonableness of the amount agreed upon. At the hearing on the parties' motions to approve the settlement agreement, the probate judge stated as follows:

> Let me tell you this. I have toyed with the idea of not approving any minor PI settlements. Not any. It's too much responsibility, from the independent point of view – not from the person involved with their injured family member or the personal injury lawyer who, you know, has all the economic concerns or the defense lawyer, who once it's settled, because they come up with an amount, they move on to something else – to just let jury verdicts decide these now. Maybe if I do that a couple of times and I see jury verdicts unfavorable, it will change my mind. And, I mean, we've had some here. And this thing with settling defendants is very troublesome.[7]

It is clear from this statement as well as others in the record that the probate court based its decision on its overarching aversion to settling personal injury claims in guardianship cases, rather than on a cold and objective evaluation of the reasonableness of this particular settlement agreement by its own terms.

Moreover, the court appeared to minimize the impact to the DeLunas of an unfavorable verdict in an eventual trial, which remained a very real possibility:

> [I]f the verdict – they say that the hospital did nothing and that you get zero, there's a certain justice in that, because the jury has heard the testimony and they found that there was no negligence. And I could live with that . . . [a]nd so my instinct is to say, "Go get your jury verdict," encourage you that you can live with whatever the result is, because there is justice in that either way. Because if it's a higher amount and there was negligence, you would want to hear that. And if it's no negligence, there's no reason for you to have expected any compensation from this particular defendant if the jury says they didn't do anything wrong.

Columbia asserts that the trial court, in refusing to approve of the settlement agreement, was essentially "gambling with the DeLunas' money." Given the probate court's statements as contained in the record, it is difficult not to see the truth in Columbia's assertion. In the event of an unfavorable verdict, the DeLunas would be responsible for

---

[7] The probate court did previously approve a settlement agreement between the DeLunas and the other two defendants in the original personal injury suit, Lopez and Pediatrics, for the same amount. It is not clear from the record why the court's decision was different with regard to the Columbia settlement agreement.

10

providing Javier with medical care, and so they were in the best position to determine whether or not it was appropriate to risk going to trial given the uncertain circumstances surrounding their case against Columbia. The probate court's usurpation of this authority is contrary to the clearly established public policy of this state favoring settlements of legal disputes and avoidance of litigation. *See, e.g., Citgo Ref. & Mktg.*, 187 S.W.3d at 61.

For the foregoing reasons, we conclude that the probate court's judgment was arbitrary and unreasonable. *See Walker*, 827 S.W.2d at 840; *In re Guerra*, 235 S.W.3d at 403. The trial court clearly abused its discretion in denying approval of the settlement agreement, and Columbia had no adequate appellate remedy. *See In re AutoNation, Inc.*, 228 S.W.3d at 667; *see also In re BP Products N. Am., Inc.*, 244 S.W.3d 840, 2008 Tex. LEXIS 69, at *19 (Tex. 2008) (orig. proceeding) (finding that the trial court abused its discretion in setting aside a valid discovery agreement without good cause and stating that "[d]elaying review until appeal, under these circumstances, would defeat not only the purpose of the discovery agreement, but also the strong public policy encouraging parties to resolve their discovery disputes without court intervention.").

## IV. CONCLUSION

We conditionally grant Columbia's petition for writ of mandamus. The writ will issue only if the probate court fails to comply. Further, we dismiss Columbia's direct appeal for want of jurisdiction.

DORI CONTRERAS GARZA,
Justice

Opinion delivered and filed
this the 17th day of April, 2008.

11