657 S.E.2d 766

**In the Matter of David Harold HANNA, Sr., Respondent.**

**No. 26437.**

Supreme Court of South Carolina.

Jan. 15, 2008.

Decided Feb. 11, 2008.

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

David Harold Hanna, Sr., of Spartanburg, pro se.

PER CURIAM.

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. In the agreement, respondent admits misconduct and consents to any sanction in Rule 7(b), RLDE, Rule 413, SCACR. Respondent requests that, if the Court imposes a period of suspension or disbarment, that the suspension or disbarment be made retroactive to the date of his interim suspension, January 18, 2007. *In the Matter of Hanna*, 371 S.C. 510, 640 S.E.2d 871 (2007). In addition, respondent agrees to pay the costs incurred by ODC and the Commission on Lawyer Conduct in investigating this matter. We accept the agreement and disbar respondent from the practice of law in this state, retroactive to the date of his interim suspension. The facts, as set forth in the agreement, are as follows.

## FACTS

Respondent admits the material portions of the factual allegations set out in the Formal Charges. The Formal Charges charge respondent with nine instances of misconduct.

## Matter I

Complainant A was the heir of the late Mr. and Mrs. Doe. Respondent had prepared a will for Mr. Doe. Mr. Doe passed away. Respondent prepared a will for Mrs. Doe. Mrs. Doe passed away shortly after Mr. Doe and before his estate was closed. The will prepared for Mrs. Doe included a devise of real property to respondent.

Prior to her death, respondent purchased a truck from Mrs. Doe that had belonged to Mr. Doe. Respondent entered into this business transaction with his client without complying with the consultation and consent requirements of the Rules of Professional Conduct. Respondent did not timely respond to the initial inquiry and several requests for additional information from ODC regarding this matter.

## Matter II

Complainant B paid respondent $2,500.00 to assist him in a custody dispute. Respondent did not hold the retainer in trust until it was earned. There were delays and continuances in the matter. Respondent did not adequately communicate with Complainant B regarding the scheduling of the hearing. Respondent did not respond to the initial inquiry or the *Treacy*[1] letter from ODC.

## Matter III

In 1999, certain real property was deeded to Complainants Mr. and Mrs. Jones in a closing conducted by a contract attorney for a closing services company called Magnolia Title. In 2003, Mr. and Mrs. Jones attempted to sell the property. At that time, they learned that the property description in the 1999 deed was incorrect. By that time, the grantor had died.

Respondent was a contract attorney for Magnolia Title.[2] He also served as legal counsel for Magnolia Title. Respondent prepared a corrective deed and contacted the heir to the grantor. The heir indicated she was not willing to sign a corrective deed until she spoke with Mr. and Mrs. Jones. She

---

1. See *In the Matter of Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982).

2. Respondent was not the contract attorney who conducted the 1999 closing for Mr. and Mrs. Jones.

requested respondent arrange a meeting. She did not hear anything further from respondent.

A corrective deed was filed. The signature of the grantor's heir was forged and falsely witnessed and notarized. Respondent recorded the deed.

When the forgery was discovered by Mr. and Mrs. Jones, respondent sent a proposed agreement in which they would agree to "use all efforts possible to correct a title problem" for the property, that "there was a clerical error in the past deed," and that they would "use their best efforts in assisting Magnolia Title Agency Incorporated in any and all methods necessary to complete this action . . . including . . . assisting in any court action." Mr. and Mrs. Jones did not sign this agreement. Respondent did not disclose the conflict of interest created by his representation of his clients' interests and the interests of Magnolia Title either prior to or subsequent to sending the proposed agreement.

Mr. and Mrs. Jones specifically instructed respondent not to sue the grantor's heir on their behalf. Respondent filed a quiet title action against the grantor's heir naming Magnolia Title and Mr. and Mrs. Jones as plaintiffs.

Respondent did not timely respond to ODC's written inquires in this matter.

### Matter IV

In July 2004, Complainant C paid respondent $1,750.00 to represent her in a custody matter involving her grandchildren. ODC investigated the allegations of neglect, incompetence, and lack of adequate communication and concluded there was not clear and convincing evidence to support Complainant C's allegations. Respondent failed to submit a timely response to the initial inquiry from ODC.

### Matter V

Complainant D was represented by respondent's partner in a civil case. Complainant D obtained a favorable judgment, but the defendant was in bankruptcy. Respondent agreed to assist with collection of the judgment since he handled bankruptcy cases for the firm.

Subsequently, respondent left the partnership and took the file with him. He collected a number of payments from the bankruptcy trustee and passed them on to Complainant D. Respondent did not withhold any fees or costs from those payments.

In May 2005, respondent received a check for $5,000.00 from the proceeds of the sale of the defendant's real property. Respondent placed this money in his trust account. He told Complainant D that he needed to review the bankruptcy payments and check with his former firm about the fee arrangements and costs incurred in the civil case. By August 2005, Complainant D had not heard anything from respondent so she contacted his former firm.

After receiving notice of this grievance, respondent contacted his former firm to attempt to get the matter resolved. When their communications broke down, respondent's attorney advised him to hold the funds in his trust account. On August 27, 2006, respondent sent Complainant D a trust account check for the full $5,000.00.

ODC requested copies of respondent's bank statements to verify that the funds had remained in trust until disbursed. Respondent did not comply with this request.

### Matter VI

Respondent established a business relationship with Magnolia Title, a closing services company owned by a non-lawyer. The relationship included respondent's representation of Magnolia Title's clients in real estate closings and the representation of Magnolia Title in claims and litigation arising from closings. Respondent was one of the several contract attorneys who conducted closings for Magnolia Title.

The common practice for non-lawyer staff of Magnolia Title included the preparation of title abstracts and closing documents for respondent's review. The closing attorney (respondent or another lawyer) would then conduct the closing and return the documents and money to Magnolia Title. Disbursements of settlement proceeds were made at the closings prior to the deposit of funds. The non-lawyer staff would then conduct post-closing activities such as recording the documents and obtaining title insurance.

Respondent allowed Magnolia Title to open an IOLTA account on which he shared signatory authority with a non-lawyer paralegal employed by Magnolia Title. Magnolia Title used that trust account for all of its closings, regardless of whether respondent handled the closing. Respondent ultimately severed his ties with Magnolia Title, but he did not close the trust account.

Magnolia Title used an out-of-state bookkeeping service for reconciliation and management of the trust account. Respondent did not have access to the Magnolia Title trust account records when ODC requested them. Respondent did not instruct the non-lawyer staff of Magnolia Title or the out-of-state bookkeeping company regarding the requirements of Rule 417, SCACR.

Complainant E rented real property to Mr. Smith. Mr. Smith wanted to purchase the property. Complainant E agreed to finance the purchase with a $3,000.00 down payment. Complainant E asked respondent to handle the closing for Mr. Smith. Mr. Smith gave Complainant E a personal check for the down payment plus closing costs. Complainant E negotiated the personal check for a cashier's check, delivered it to Magnolia Title, and scheduled the closing.

Respondent conducted the closing and delivered the documents to Magnolia Title to record. The deed and mortgage were not recorded. When Complainant E contacted respondent after the closing, respondent assured him that the documents had been recorded.

Complainant E discovered that the deed and mortgage had not been recorded when he received a tax notice on the property six months later. By that time, Mr. Smith had defaulted on some of his mortgage payments. Respondent advised Complainant E not to file the deed and mortgage at that time in order to avoid a foreclosure.

ODC made repeated inquiries to respondent regarding an accounting of funds paid from Mr. Smith's check to Magnolia Title for recording fees, deed stamps, title insurance premiums, etc., that should have been refunded. Respondent did not respond.

## Matter VII

Complainant F retained respondent to represent her in connection with injuries sustained in an automobile accident on March 2, 2001. When respondent left his law firm to start a solo practice, he took Complainant F's file with him.

Complainant F incurred $55,000.00 in medical bills. Respondent submitted a demand in January 2004. The claim was not settled.

On March 3, 2004, the day after the statute of limitations expired, respondent filed suit. The pleadings had been backdated to March 1, 2004. Respondent was unable to locate the defendant for service. He did not attempt service by publication. The lawsuit was dismissed.

Respondent did not have malpractice insurance. He attempted to settle with Complainant F for $8,000.00. In his communications with Complainant F regarding this proposal, respondent did not comply with the disclosure and consultation requirements of the Rules of Professional Conduct.

## Matter VIII

Complainant G hired respondent for three legal matters. Respondent failed to adequately communicate with Complainant G regarding those matters.

Respondent failed to timely respond to the Notice of Full Investigation in this matter. Respondent failed to respond to ODC's request for additional information.

## Matter IX

Complainant H hired respondent to represent him in a bankruptcy matter. A creditors' meeting was held on May 30, 2006. At that meeting, the trustee raised concerns about Complainant H's transfer of real estate to his daughter prior to filing bankruptcy.

Respondent asked Complainant H to gather documents related to the conveyance. Complainant H complied with this request and met with respondent's assistant in his absence on June 9, 2006. The assistant drafted a letter of explanation to the trustee and enclosed the documents. She left the draft and documents for respondent's review.

Complainant H tried repeatedly to contact respondent, but he did not respond. As of July 21, 2006, the date Complainant H submitted his grievance, he had not heard from respondent.

In his response to ODC, respondent stated he did review the draft letter prepared by his assistant but did not send it because he wanted to include a copy of the appraisal which he claimed Complainant H had not yet provided. Respondent submitted copies of a number of letters that he claimed he sent to Complainant H asking for a copy of the appraisal. Complainant H never received these letters.

Ultimately, respondent submitted the letter to the trustee on August 21, 2006, after receiving notice of the grievance. The only change respondent made to the draft initially prepared by his assistant was to add a paragraph that said the delay was due to Complainant H's failure to provide documentation to respondent and that Complainant H had become forgetful.

While Complaint H's matter was pending before the bankruptcy court, the Honorable John E. Waites, United States Bankruptcy Judge, submitted a copy of the order of the bankruptcy court in *In the Matter of Farnsworth* indefinitely suspending respondent from practicing before the bankruptcy court in this state to ODC. This indefinite suspension followed various sanctions against respondent in fourteen prior matters from 2003 to 2006. These prior sanctions were imposed for a variety of problems, including failing to obtain debtors' signatures on schedules and amended plans, failing to disclose previous filings, deficient representation, violating local rules, filing improper motions, and failing to timely remit filing fees.

## LAW

Respondent admits that, by his misconduct, he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation to client); Rule 1.2 (lawyer shall abide by client's decisions concerning objectives of representations); Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing a client); Rule 1.4 (lawyer shall keep client reasonably informed about the status of a matter and promptly comply with reasonable requests for informa-

tion); Rule 1.7(a) (lawyer shall not represent client if representation will be directly adverse to another client unless lawyer reasonably believes representation will not adversely affect relationship with the other client and each client consents after consultation); Rule 1.7(b) (lawyer shall not represent client if the representation of that client may be materially limited by the lawyer's responsibilities to a third person unless lawyer reasonably believes the representation will not be adversely affected and the client consents after consultation); Rule 1.8(a) (lawyer shall not enter into business transaction with a client unless terms are fair and client consents in writing); Rule 1.8(c) (lawyer shall not prepare an instrument giving lawyer substantial gift from a client); Rule 1.8(h) (lawyer shall not settle a claim for liability with unrepresented client or former client unless that person is advised in writing of desirability of seeking and reasonable opportunity to seek independent legal counsel); Rule 1.9 (lawyer who has formerly represented client in matter shall not thereafter represent another person in same or substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client gives informed consent in writing); Rule 1.15 (lawyer shall promptly deliver funds to which client is entitled; lawyer shall deposit unearned legal fees into trust account and withdraw funds only when earned); Rule 3.3 (lawyer shall not knowingly make false statement of fact to tribunal); Rule 5.3 (lawyer having direct supervisory authority over non-lawyer shall make reasonable efforts to ensure that person's conduct is compatible with professional obligations of lawyer and shall be responsible for non-lawyer's conduct if conduct would be a violation of Rules of Professional Conduct if engaged in by lawyer); Rule 8.1(b) (lawyer shall not knowingly fail to respond to lawful demand for information from disciplinary authority); Rule 8.4(a) (it is professional misconduct for a lawyer to violate Rules of Professional Conduct); Rule 8.4(d) (it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice).[3]

---

3. The Rules of Professional Conduct cited in this opinion are those which were in effect at the time of respondent's misconduct.

Respondent further admits his misconduct is grounds for discipline under Rule 7, RLDE, of Rule 413, SCACR, specifically Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct), Rule 7(a)(2) (it shall be ground for discipline for lawyer to engage in conduct violating applicable rules of professional conduct in another jurisdiction), Rule 7(a)(3) (it shall be ground for discipline for lawyer to knowingly fail to respond to a lawful demand from disciplinary authority), Rule 7(a)(5) (it shall be ground for discipline for lawyer to engage in conduct tending to pollute administration of justice, bring courts or legal profession into disrepute, or conduct demonstrating an unfitness to practice law), and Rule 7(a)(7) (it shall be ground for discipline for lawyer to willfully violate a court order). In addition, respondent admits his misconduct violated Rule 417, SCACR.

## CONCLUSION

We accept the Agreement for Discipline by Consent and disbar respondent. The disbarment shall be retroactive to the date of respondent's interim suspension. Within thirty (30) days of the date of this opinion, respondent shall pay the costs incurred by ODC and the Commission on Lawyer Conduct in the investigation of these matters. Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

In addition, should it be determined that any restitution remains outstanding, ODC and respondent shall file a restitution plan with the Court within thirty (30) days of the date of this opinion. In the plan, respondent shall agree to pay restitution to all clients, banks, and other persons and entities who have incurred losses as a result of his misconduct in connection with this matter. Moreover, in the restitution plan, respondent shall agree to reimburse the Lawyers' Fund for Client Protection for any claims paid as a result of his misconduct in connection with this matter.

**DISBARRED.**

TOAL, C.J., MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.