COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

§

IN RE: THERESA CABALLERO,

§

Relator.

§

§

No. 08-13-00069-CV

AN ORIGINAL PROCEEDING

IN MANDAMUS

## **O P I N I O N**

Theresa Caballero, Relator, has filed a petition for writ of mandamus against the Honorable George D. Gilles, seeking relief from two orders entered by him in a disciplinary action instituted against her by the Commission for Lawyer Discipline.[1] In a case of first impression, we must decide whether a district judge has the discretion to reject a Rule 11 settlement agreement entered into between an attorney and the Commission. This issue is decided by a divided panel. While we disagree about the resolution, none of us should be heard as condoning the conduct alleged.

### **FACTUAL AND PROCEDURAL SUMMARY**

During the trial of a criminal case in 2011, the Honorable Steve Smith found Caballero in contempt of court and filed a misconduct complaint against her with the Commission for Lawyer

---

[1] Judge Gilles is the Judge of the 142nd District Court in Midland County, Texas. The Texas Supreme Court appointed Judge Gilles to preside in the disciplinary action filed in the 448th District Court, El Paso County, Texas. *See* TEX.RULES DISCIPLINARY P. 3.02, 3.03, *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G, app. A-1 (West 2013).

Discipline.[2]  The Commission filed a disciplinary petition against Caballero alleging that she committed professional misconduct in violation of Texas Disciplinary Rules of Professional Conduct 3.02, 3.04(a), 3.04(c)(5), 3.04(d), 8.04(a)(1), 8.04(a)(3), and 8.04(a)(4).  This disciplinary action[3] is based exclusively on the allegations of misconduct arising out of the criminal trial and made by Judge Smith.  On August 20, 2012, the Honorable Juanita Vasquez-Gardner, who was assigned to hear the *de novo* contempt proceeding, found Caballero in contempt of court and assessed punishment at a fine of $100 for each violation for a total of $900, but the court probated the entire fine.[4]

On August 28, 2012, the Commission filed a motion for partial summary judgment based on the contempt judgment.  It alleged that Caballero was collaterally estopped from relitigating the issues decided in the contempt proceeding.  The Commission specifically sought partial summary judgment on the ground that Caballero's contemptuous acts constituted professional misconduct in violation of Rule 3.04(c)(5) which prohibits conduct intended to disrupt proceedings before a tribunal and Rule 8.04(a)(4) which prohibits conduct constituting obstruction of justice.  The Commission did not move for summary judgment on any of the

---

[2]  The defendant in the criminal case obtained an order expunging the records related to that case.  Accordingly, the opinion will not include the defendant's name, the cause number, or any of the facts related to that case.  *See* TEX.CODE CRIM.PROC.ANN. art. 55.03 (West 2006)(prohibiting the release, maintenance, dissemination, or use of the expunged records and files for any purpose).

[3]  The Texas Rules of Disciplinary Procedure distinguishes between a "Disciplinary Action" and a "Disciplinary Proceeding."  A "Disciplinary Action" means a proceeding brought by or against an attorney in a district court or any judicial proceeding covered by the rules other than an evidentiary hearing.  TEX. RULES DISCIPLINARY P. 1.06(J), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G, app. A-1 (West 2013).  "Disciplinary Proceedings" include the processing of a grievance, the investigation and processing of an inquiry or complaint, presentation of a complaint before a summary disposition panel, and the proceeding before an evidentiary panel.  TEX. RULES DISCIPLINARY P. 1.05(L).  The opinion will refer to the procedure in this case as a disciplinary action in accordance with Rule 1.06(J).

[4]  *See* TEX.GOV'T CODE ANN. § 21.002 (d)(West 2004)(providing that an officer of a court who is held in contempt by a trial court shall, on proper motion filed in the offended court, be released on her own personal recognizance pending a determination of her guilt or innocence; the presiding judge of the administrative judicial region in which the alleged contempt occurred shall assign a judge who is subject to assignment by the presiding judge other than the judge of the offended court to determine the guilt or innocence of the officer of the court).

remaining allegations. Judge Gilles conducted a hearing on the motion on October 19, 2012, but he did not immediately rule. In late October or early November, the Commission and Caballero engaged in settlement negotiations and entered into an agreed judgment (1) finding that Caballero had engaged in professional misconduct in violation of Rule 3.04(c)(5); and (2) suspending her from the practice of law for nine months, but fully probating the suspension. The agreed judgment recited that the probated suspension would begin on December 1, 2012 and end on August 31, 2013. Caballero and her attorney signed the judgment as did the Commission.

On November 9, 2012, Judge Gilles notified the parties that he would grant the motion for partial summary judgment. The judge did not include a signed order with the letter because he believed that any order had to be signed in El Paso County.[5] Ten days later, Judge Gilles sent a letter to Caballero and the Commission stating that he had received the agreed judgment reflecting the "contemplated settlement," but he would not accept the settlement proposed by counsel. Judge Gilles did not provide a reason for rejecting the settlement agreement. The letter also informed the parties that the jury trial would begin on November 27, 2012. On November 20, 2012, the Commission sent a letter to Judge Gilles inquiring about the entry of the order granting partial summary judgment since an order had not yet been signed. The letter also informed him that the Commission did not intend to proceed to trial on the remaining allegations of professional misconduct, and consequently, jurors would not be necessary because the sole issue would be the appropriate sanction for the established misconduct. That same day, Caballero filed a motion to recuse Judge Gilles based on his refusal to enter the agreed judgment in accordance with the settlement agreement. The judge assigned to hear the motion to recuse

---

[5] The Commission noted in a subsequent letter to the trial court that the geographical constraints imposed by Article V, Section 7 of the Texas Constitution and Section 74.094(e) of the Texas Government Code do not apply in a disciplinary action. *See Acevedo v. Commission for Lawyer Discipline*, 131 S.W.3d 99, 102-04 (Tex.App.--San Antonio 2004, pet. denied).

denied it on December 21, 2012. Judge Gilles granted the Commission's motion for partial summary judgment on February 13, 2013 finding that Caballero engaged in acts of professional misconduct in violation of Rules 3.04(c)(5) and 8.04(a)(4). Shortly thereafter, Caballero filed a mandamus petition in this court challenging the trial court's refusal to enter judgment in accordance with the parties' agreement.

## THE RULES OF DISCIPLINARY PROCEDURE

We begin with an overview of the disciplinary structure. The rules are divided into fifteen parts and the titles are telling. Part I addresses "General Rules." Section 1.03 informs us that:

> These rules are to be broadly construed to ensure the operation, effectiveness, integrity, and continuation of the professional disciplinary and disability system.

Part II creates the district grievance committees and provides for its governance. Herein we find the rule creating the election available to a respondent attorney.

### 2.15. Election

> A Respondent given written notice of the allegations and rule violations complained of, in accordance with Rule 2.14, shall notify the Chief Disciplinary Counsel whether the Respondent seeks to have the Complaint heard in a district court of proper venue, with or without a jury, or by an Evidentiary Panel of the Committee. . . .

The rules that follow describe the procedure for Evidentiary Panel hearings. There is no incorporation of the Texas Rules of Civil Procedure. Discovery is limited. The Evidentiary Panel may order the Commission and the respondent to participate in mandatory alternative dispute resolution as provided by Chapter 154 of the Civil Practice and Remedies Code or as otherwise provided by law when deemed appropriate. With regard to evidence, the panel chair shall admit all such probative and relevant evidence deemed necessary for a fair and complete hearing, "generally in accord with the Texas Rules of Evidence; provided, however, that

- 4 -

admission or exclusion of evidence shall be in the discretion of the Evidentiary Panel chair. . . ."

Rule 2.17(E), (K) and (L). Rule 2.18 relates to the imposition of sanctions:

### 2.18. Imposition of Sanctions

The Evidentiary Panel may, in its discretion, conduct a separate hearing and receive evidence as to the appropriate Sanctions to be imposed. Indefinite Disability sanction is not an available Sanction in a hearing before an Evidentiary Panel. In determining the appropriate Sanctions, the Evidentiary Panel shall consider:

A. The nature and degree of the Professional Misconduct for which the Respondent is being sanctioned;
B. The seriousness of and circumstances surrounding the Professional Misconduct;
C. The loss or damage to clients;
D. The damage to the profession;
E. The assurance that those who seek legal services in the future will be insulated from the type of Professional Misconduct found;
F. The profit to the attorney;
G. The avoidance of repetition;
H. The deterrent effect on others;
I. The maintenance of respect for the legal profession;
J. The conduct of the Respondent during the course of the Disciplinary Proceeding;

In addition, the Respondent's disciplinary record, including any private reprimands, is admissible on the appropriate Sanction to be imposed. Respondent's Disability may not be considered in mitigation, unless Respondent demonstrates that he or she is successfully pursuing in good faith a program of recovery or appropriate course of treatment.

Part III is entitled "Trial in District Court." These rules address the assignment of a judge; filing, service and venue; answer of the respondent; and discovery. Rule 3.06 provides for trial by jury:

### 3.06. Trial by Jury

In a Disciplinary Action, either the Respondent or the Commission shall have the right to a jury trial upon timely payment of the required fee and compliance with the provisions of Rule 216, Texas Rules of Civil Procedure. The Complainant has no right to demand a jury trial.

Rule 3.08 sets out the applicable rules for a trial in district court. Here, the Texas Rules of Civil Procedure *do* apply:

**3.08. Additional Rules of Procedure in the Trial of Disciplinary Actions**

In all Disciplinary Actions brought under this part, the following additional rules apply:

A. Disciplinary Actions are civil in nature.
B. **Except as varied by these rules, the Texas Rules of Civil Procedure apply.**

\*\*\*\*\*

G. **It shall be the policy of the Commission to participate in alternative dispute resolution procedures where feasible**; **provided, however, that Disciplinary Actions shall be exempt from any requirements of mandatory alternative dispute resolution procedures as provided by Chapter 154 of the Civil Practice and Remedies Code or as otherwise provided by law.** [Emphasis added].

Rules 3.09 and 3.10 explain the bifurcated trial procedure.

**3.09. Judgment**

If the trial court fails to find from the evidence in a case tried without a jury, or from the verdict in a jury trial, that the Respondent's conduct constitutes Professional Misconduct, the court shall render judgment accordingly. If the court finds that the Respondent's conduct does constitute Professional Misconduct, the court shall determine the appropriate Sanction or Sanctions to be imposed. . . . The trial court shall promptly enter judgment after the close of evidence (in the case of a nonjury trial) or after the return of the jury's verdict. . . .

**3.10. Imposition of Sanctions**

The trial court may, in its discretion, conduct a separate hearing and receive evidence as to the appropriate Sanctions to be imposed. Private reprimand is not an available Sanction. Indefinite Disability suspension is not an available Sanction. In determining the appropriate Sanctions, the court shall consider:

A. The nature and degree of the Professional Misconduct for which the Respondent is being sanctioned;
B. The seriousness of and circumstances surrounding the Professional Misconduct;
C. The loss or damage to clients;

D. The damage to the profession;

E. The assurance that those who seek legal services in the future will be insulated from the type of Professional Misconduct found;

F. The profit to the attorney;

G. The avoidance of repetition;

H. The deterrent effect on others;

I. The maintenance of respect for the legal profession;

J. The conduct of the Respondent during the course of the Committee action;

K. The trial of the case; and

L. Other relevant evidence concerning the Respondent's personal and professional background.

In addition, the Respondent's disciplinary record, including any private reprimands, is admissible on the appropriate Sanction to be imposed. Respondent's Disability may not be considered in mitigation, unless Respondent demonstrates that he or she is successfully pursuing in good faith a program of recovery or appropriate course of treatment.

What is unmistakenly clear, and highly significant, is that when a respondent attorney elects a jury trial, the jury may only render a verdict on whether the attorney has committed acts of misconduct. The jury is not permitted to determine sanctions. Therein lies the dispute between the majority opinion and the dissent. We conclude that the language requiring the judge to determine sanctions and enter judgment relates to the procedure for trial on the merits and does not relate to settlement agreements. Following a bench trial, the judge shall determine sanctions and enter judgment at the conclusion of the evidence. In a jury trial, upon return of the verdict the trial court shall determine sanctions and enter judgment. These procedural specifications neither contemplate nor define the discretion of the trial court to reject a Rule 11 agreement. But as part of the Texas Rules of Civil Procedure, Rule 11 is indeed implicated.

**REFUSAL TO ENFORCE RULE 11 AGREED JUDGMENT**

In three related issues, Caballero contends that trial court clearly abused its discretion by refusing to enter the Rule 11 agreed judgment to settle the disciplinary case and by proceeding to rule on the Commission's motion for partial summary judgment. To be entitled to mandamus

relief, a relator must meet two requirements. First, the relator must show that the trial court clearly abused its discretion. *In re Prudential Insurance Company of America*, 148 S.W.3d 124, 135 (Tex. 2004). Second, the relator must demonstrate it has no adequate remedy by appeal. *Id.* at 136.

*The Disciplinary Process*

Under Article II, Section 1 of the Texas Constitution and Section 81.011(c) of the State Bar Act, the Texas Supreme Court has the power to regulate the practice of law in the State of Texas. *In re State Bar of Texas*, 113 S.W.3d 730, 732 (Tex. 2003). The Court has the constitutional and statutory responsibility within the state of Texas for the lawyer discipline and disability system, and it has inherent power to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline and disability. TEX.RULES DISCIPLINARY P. Preamble, *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G, app. A-1 (West 2013). The Supreme Court has delegated the responsibility for administering and supervising lawyer discipline and disability to the Board of Directors of the State Bar of Texas. *Id.* The Board is vested with authority to adopt rules of procedure and administration consistent with the Texas Rules of Disciplinary Procedure. *Id.* The Commission for Lawyer Discipline is a permanent committee of the State Bar of Texas. TEX.GOV'T CODE ANN. § 81.076(b)(West 2013); TEX.RULES DISCIPLINARY P. 1.06(D). Each attorney admitted to practice in Texas and each attorney specially admitted by a court of this state for a particular proceeding (*pro hoc vice*) is subject to the disciplinary and disability jurisdiction of the Supreme Court and the Commission for Lawyer Discipline. TEX.GOV'T CODE ANN. § 81.071. Likewise, each attorney is subject to the Texas Rules of Disciplinary Procedure and the Texas Disciplinary Rules of Professional Conduct. TEX.GOV'T CODE ANN. § 81.072(d).

When a respondent attorney elects to have a complaint heard in a district court of proper venue, the Commission's chief disciplinary counsel is required to notify the Supreme Court of the election by transmitting a copy of the disciplinary petition to the Supreme Court. TEX.RULES DISCIPLINARY P. 3.01. Thus, the Supreme Court has original jurisdiction of the disciplinary action. *See Acevedo*, 131 S.W.3d at 103-04 (stating that the Supreme Court has original jurisdiction of the disciplinary petition). The Supreme Court then appoints an active district judge who does not live within the administrative judicial district in which the respondent resides to preside in the case, and a copy of the appointment order is transmitted to the chief disciplinary counsel. TEX.RULES DISCIPLINARY P. 3.02. After the trial judge has been appointed, the chief disciplinary counsel must promptly file the disciplinary petition with the district clerk of the county of alleged venue. TEX.RULES DISCIPLINARY P. 3.03. Disciplinary actions are civil in nature and the Texas Rules of Civil Procedure apply unless the Rules of Disciplinary Procedure require a different procedure. TEX.RULES DISCIPLINARY P. 3.08(A), (B).

*No Adequate Remedy?*

We consider first whether Caballero has an adequate remedy by appeal. It is undisputed that Caballero will be able to appeal the final judgment of the trial court. TEX.RULES DISCIPLINARY P. 3.16 (providing that a final judgment of the district court may be appealed as in civil cases generally). But that does not mean that the ability to appeal is an adequate remedy. The Supreme Court has recognized that the operative word, "adequate," has no comprehensive definition. *Prudential*, 148 S.W.3d at 136. The term demands a careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts. *Id.* These considerations implicate both public and private interests. *Id.* Mandamus relief will not be granted when the law provides

- 9 -

another plain, adequate, and complete remedy. *In re Texas Dept. of Family and Protective Services*, 210 S.W.3d 609, 613 (Tex. 2006); *In re Prudential,* 148 S.W.3d at 136.

While a final judgment of the district court in a disciplinary action is appealable pursuant to Rule 3.16, Caballero is not permitted to supersede that judgment if the court disbars her. TEX.RULES DISCIPLINARY P. 3.14 (providing that a district court judgment of disbarment cannot be superseded or stayed). The judgment can only be stayed in the event of a judgment of suspension, and even then, only if the respondent attorney petitions the court and carries the burden of proving that the respondent's continued practice of law does not pose a continuing threat to the welfare of the respondent's clients or the public. *Id.* If the trial court disbars Caballero or suspends her license to practice law and refuses to stay the judgment during the pendency of an appeal, Caballero will be harmed even if it is subsequently determined that the trial court abused its discretion by refusing to enter the agreed judgment in accordance with the parties' settlement of the disciplinary action. We conclude that the remedy offered by direct appeal is inadequate and incomplete.

*Clear Abuse of Discretion?*

A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). With respect to resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Id.* at 839-40. The relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 840. Review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* A trial court has no discretion in determining what the law is or applying the law to the facts even when the law is unsettled. *In re Prudential*,

148 S.W.3d at 135. Consequently, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker*, 827 S.W.2d at 840. The question is not whether Judge Gilles abused his discretion. In this context, the specific question is whether the rules accorded Judge Gilles *any* discretion to reject the agreement.

The parties raise a number of arguments and counter-arguments, but we believe there are four primary issues presented by the mandamus petition: (1) whether the agreed judgment signed by the parties is a valid Rule 11 agreement; (2) whether the Commission validly withdrew its consent to the Rule 11 agreement; (3) whether performance of the agreement is impossible due to the passage of time and change in circumstances; and (4) whether the trial court had discretion to reject or disapprove the Rule 11 agreed judgment because this is a disciplinary proceeding. A Rule 11 agreement must be in writing and signed and filed with the court unless it is made in open court. *See* TEX.R.CIV.P. 11. The filing requirement creates the imprimatur of a court record. *ExxonMobil Corporation v. Valence Operating Company*, 174 S.W.3d 303, 309 (Tex.App.--Houston [1st Dist.] 2005, pet. denied). A settlement agreement must comply with Rule 11 to be enforceable. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995); *Broderick v. Kaye Bassman International Corp.*, 333 S.W.3d 895, 904-05 (Tex.App.--Dallas 2011, no pet.). A trial court has a ministerial duty to enforce a valid Rule 11 agreement. *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex. 1996); *In re Guardianship of White*, 329 S.W.3d 591, 592 (Tex.App.--El Paso 2010, no pet.).

*Was the Agreed Judgment a Valid Rule 11 Agreement?*

It is undisputed that the agreed judgment is in writing and signed by both the Commission and Caballero. The Commission argues, however, that the agreed judgment signed by the parties was not filed with the El Paso County District Clerk until November 21, 2012.

While Rule 11 requires the writing to be filed in the court record, it does not say when it must be filed. *Padilla*, 907 S.W.2d at 461. The purpose of the filing requirement is to put the agreement before the court. *Id.* The trial court faxed a letter to the parties on November 19, 2012 which stated in part that: "The Court has received the proposed judgment reflecting the contemplated settlement in the above-styled and numbered cause. The Court will not accept the settlement proposed by counsel." The only reasonable conclusion that can be drawn from the letter is that the agreed judgment signed by the parties was put before the court and presented for his signature. There is no evidence that the Commission withdrew its consent to the Rule 11 agreement on or before November 19, 2012. In fact, the Commission sent a letter dated December 11, 2012 to the judge hearing the motion to recuse, and stated that it "does not dispute an agreement between the parties as to a sanction to be imposed, but is unconvinced that agreement is absolutely binding on Judge Gilles." Therefore, at the time the trial court refused to sign the agreed judgment, it was a valid Rule 11 agreement.

*Did the Commission Withdraw its Consent to the Rule 11 Agreement?*

The Commission asserts in its response and supplemental response that it no longer consents to the Rule 11 agreement. A party has the right to revoke its consent to a Rule 11 agreement at any time before the rendition of judgment. *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983). Withdrawal of consent must be effectively communicated to the trial court. *Baylor College of Medicine v. Camberg*, 247 S.W.3d 342, 346-47 (Tex.App.-- Houston [14th Dist.] 2008, pet. denied); *First Heights Bank, FSB v. Marom*, 934 S.W.2d 843, 845 (Tex.App.-Houston [14th Dist.] 1996, no writ). Ordinarily, when one party withdraws consent to a Rule 11 agreement, another party can still seek to enforce it as a contract through an amended pleading or a counterclaim. *Ford Motor Company v. Castillo*, 279 S.W.3d 656, 663

(Tex. 2009); *Padilla*, 907 S.W.2d at 461; *see Kanan v. Plantation Homeowner's Association Inc.*, 407 S.W.3d 320, 334 (Tex.App.--Corpus Christi 2013, no pet.h.)(Where consent to a Rule 11 agreement has been withdrawn, a court may enforce it through a separate breach of contract claim). Generally, these rules are applied in cases where the trial court rendered judgment pursuant to a Rule 11 agreement and one party is claiming that it withdrew its consent to the agreement, but we believe they must be applied in this case where the partial summary judgment granted by the trial court is contrary to the Rule 11 agreement.

There is no evidence in the mandamus record that the Commission ever took any steps in the trial court to withdraw its consent to the Rule 11 agreed judgment before the trial court granted the Commission's motion for partial summary judgment on February 13, 2013. The Commission asserted in its initial mandamus response that Caballero had requested that the agreed judgment be entered in accordance with the parties' agreement, but the Commission "cannot agree to the entry of an agreed judgment under such circumstances" because the beginning date of the probated suspension had already passed. In its supplemental response filed on May 24, 2013, the Commission stated it no longer consents to the agreed judgment because the circumstances have changed since the parties entered into the agreement.[6] More specifically, the Commission asserts that it does not agree to the amount of attorney's fees Caballero is ordered to pay because it has had to expend additional resources defending against the motion to recuse Judge Gilles and against this mandamus proceeding. The Commission faults Caballero, but it is readily apparent that it would have been unnecessary for Caballero to file the motion to recuse or the mandamus petition had the trial court performed its ministerial duty to sign the agreed judgment when asked to do so by the parties.

---

[6] This case was originally set for submission on June 6, 2013, but the court vacated the setting. The supplemental response was filed less than two weeks before that date.

We have found no cases holding that withdrawal of consent to a Rule 11 agreement can be effectively done for the first time in a mandamus proceeding. Significantly, the Commission did not withdraw its consent until after the trial court had granted partial summary judgment contrary to the Rule 11 agreement. The only issue remaining to be determined by the trial court is determination of the sanction. The Commission's withdrawal of consent at this late hour and in this forum prejudices Caballero because the trial court has already rendered judgment in a manner contrary to the Rule 11 agreement. Caballero cannot seek to enforce the Rule 11 agreement through an amended pleading or counterclaim asserting a breach of contract claim. We conclude that the Commission's withdrawal of consent came too late because it occurred after the trial court had already rendered judgment contrary to the Rule 11 agreement.

*Is Performance of the Agreement Impossible?*

In its response and supplemental response, the Commission maintains that the Rule 11 agreement cannot be enforced because the date on which the probated suspension was to start has long since passed. The Commission relies on the rule that a judgment rendered on a Rule 11 settlement agreement must be "in strict or literal compliance" with the terms recited into the record and cannot remove or add material terms. *See Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006). It argues, in effect, that the starting and ending dates of the probated suspension are material terms of the agreement.

Rule 11 agreements are contracts relating to litigation and are subject to general rules of contract construction. *Trudy's Texas Star, Inc. v. City of Austin*, 307 S.W.3d 894, 914 (Tex.App.--Austin 2010, no pet.). Our primary objective in construing a written contract is to ascertain and give effect to the intentions the parties have objectively manifested in the written instrument. *Trudy's Texas Star*, 307 S.W.3d at 914, *citing Frost National Bank v. L & F*

- 14 -

*Distributors, Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005). Contract terms are given their plain, ordinary, and generally accepted meanings, and contracts are to be construed as a whole in an effort to harmonize and give effect to all provisions of the contract. *Trudy's Texas Star*, 307 S.W.3d at 914, *citing Valence Operating Company v. Dorsett*, 164 S.W.3d 656, 663 (Tex. 2005). If a contract can be given a certain or definite legal meaning or interpretation, it is not ambiguous and is construed as a matter of law. *Trudy's Texas Star*, 307 S.W.3d at 914, *citing Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

Generally, time of performance is not a material term of an agreement. *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex.App.--Dallas 2008, no pet.); *Shaw v. Kennedy, Ltd.*, 879 S.W.2d 240, 246 (Tex.App.--Amarillo 1994, no writ). The fact that a contract states a date for performance does not, in itself, mean that time is of the essence. *Breof BNK Texas, L.P. v. D.H. Hill Advisors, Inc.*, 370 S.W.3d 58, 64 (Tex.App.--Houston [14th Dist.] 2012, no pet.); *Shaw*, 879 S.W.2d at 246. For timely performance to be a material term, the contract must expressly provide that time is of the essence or there must be something in the nature of the subject matter or connected with the purpose of the contract and the circumstances surrounding it which makes it apparent that the parties intended that the contract be performed at or within the time specified. *Deep Nines*, 246 S.W.3d at 846.

The Rule 11 agreement provided that the nine-month period of probated suspension would begin on December 1, 2012 and conclude on August 31, 2013 but it does not clearly manifest that the parties intended for time to be of the essence. Further, we do not perceive anything in the nature of a disciplinary hearing or the circumstances surrounding the Rule 11 agreement to make it apparent that the parties intended for time to be of the essence. The material terms of the Rule 11 agreement are that Caballero's license to practice law would be

suspended for nine months, the suspension would be fully probated, and she would pay the Commission $1,000 as attorney's fees.

*Did the Trial Court Have Discretion to Approve or Reject the Rule 11 Agreement?*

The Commission cites *State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994) as authority for its position that the trial court has broad discretion to determine the appropriate sanction for professional misconduct. *Kilpatrick* certainly states that the trial court has broad discretion to determine whether an attorney guilty of professional misconduct should be reprimanded, suspended, or disbarred. *Id.* But it did not involve a situation where the trial court rejected a Rule 11 settlement agreement so we do not read it to stand for the proposition that a trial court has authority or discretion to reject such an agreement between the parties.

Texas law strongly favors and encourages voluntary settlement and orderly dispute resolution. *Wright v. Sydow*, 173 S.W.3d 534, 551 (Tex.App.--Houston [14th Dist.] 2004, pet. denied), *citing Schlumberger Technology Corporation v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997). In *Hernandez v. Telles*, this court noted that "[t]he law has always favored the resolution of controversies through compromise and settlement rather than through litigation and it has always been the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." *Hernandez v. Telles*, 663 S.W.2d 91, 93 (Tex.App.--El Paso 1983, no writ). This strong public policy in favor of voluntary settlements is reflected in Section 154.002 of the Civil Practice and Remedies Code:

> It is the policy of this state to encourage the peaceable resolution of disputes, with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children, and the early settlement of pending litigation through voluntary settlement procedures.

TEX.CIV.PRAC.&REM.CODE ANN. § 154.002 (West 2011). Further, it is the responsibility of all trial and appellate courts and their court administrators to carry out the policy under Section 154.002. TEX.CIV.PRAC.&REM.CODE ANN. § 154.003.

The Rules of Disciplinary Procedure address the policy embodied in Chapter 154 in two instances. First, in a case where the respondent attorney has elected to have the complaint heard by an Evidentiary Panel, Rule 2.17(K) provides that the panel chair, upon motion or otherwise, may order the Commission and the respondent attorney to participate in mandatory alternative dispute resolution as provided by Chapter 154. TEX.RULES DISCIPLINARY P. 2.17(K).[7] Second, in a case where the respondent attorney has elected to have the complaint heard in the district court, Rule 3.08(G) states that it is the policy of the Commission to participate in alternative dispute resolution procedures where feasible, but disciplinary actions are exempt from any requirement of mandatory alternative dispute resolution procedures under Chapter 154 of the Civil Practice and Remedies Code or as otherwise provided by law. TEX.RULES DISCIPLINARY P. 3.08(G).[8]

We have found no cases holding that a trial court has discretion in every civil case to approve or reject a settlement agreement entered into by the parties. There are a few instances where approval of a settlement agreement is required. Approval of settlement agreements entered into by the guardian to settle a personal injury suit is required in the guardianship context. *See In re Guardianship of DeLuna*, 286 S.W.3d 379, 384-86 (Tex.App.--Corpus Christi-Edinburg 2008, orig. proceeding). The Texas Rules of Civil Procedure require trial court

---

[7] The respondent attorney is required to make an election whether he or she seeks to have a complaint heard in district court or by an evidentiary panel of the grievance committee. TEX. RULES DISCIPLINARY P. § 2.15.

[8] In an evidentiary hearing under Rule 2.17, the chair of the Evidentiary Panel, upon motion made or otherwise, may order the Commission and the respondent attorney to participate in mandatory alternative dispute resolution under Chapter 154 or as otherwise provided by law when deemed appropriate. TEX. RULES DISCIPLINARY P. § 2.17(K).

approval of a settlement or compromise agreement in a class action. TEX.R.CIV.P. 42(e)(1)(a) (providing that "[t]he court must approve any settlement, dismissal, or compromise of the claims, issues, or defenses of a certified class."). Under Federal Rule of Civil Procedure 23.1(c), a shareholder derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. FED.R.CIV.P. 23.1(c). The Federal Rules of Bankruptcy Procedure authorize the bankruptcy court, upon motion of the trustee, to approve a settlement or compromise of a debtor's claim. FED.R.BANK.P. 9019(a).

Some states and the District of Columbia require judicial approval of the settlement of attorney discipline matters. *See e.g.*, *Kentucky Bar Association v. Robinson*, 386 S.W.3d 739, 743-44 (Ky. 2012)(discussing Kentucky's Supreme Court Rule 3.480(2) which permits the Supreme Court to consider negotiated sanctions and provides specific procedures for the attorney, bar counsel, and the trial commissioner to follow; the Supreme Court may approve the negotiated sanction or remand the case for hearing or other proceedings); *In re Fling*, 44 A.3d 957, 957-58 (Ct.App. D.C. 2012)(approving a petition for negotiated attorney discipline made pursuant to D.C. Bar R. XI, § 12.1); *In re Hanna*, 657 S.E.2d 766, 767 (S.C. 2008)(in attorney disciplinary proceedings, the attorney and South Carolina's Office of Disciplinary Counsel sought judicial approval of agreement for discipline by consent).

The Texas Rules of Disciplinary Procedure do not provide procedures for the settlement of a disciplinary action nor do the rules require judicial approval of the settlement agreement. Consequently, we return to the procedural hierarchy established by the rules. In so doing we reiterate what we noted at the outset. The language requiring the judge to determine sanctions and enter judgment relates to the procedure for trial on the merits and does not relate to

settlement agreements. These procedural specifications neither contemplate nor define the discretion of the trial court to reject a Rule 11 agreement.

We also must emphasize that *stare decisis* results in predictability in the law, which allows people to rationally order their conduct and affairs. *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000). There is evidence in the mandamus record that the Commission entered into a similar Rule 11 settlement agreement with Relator's co-counsel in the criminal trial who had also been held in contempt, but a different judge was assigned to hear that disciplinary proceeding. In contrast with what happened here, the trial judge in co-counsel's case signed the agreed judgment. Application in disciplinary proceedings of the established rule that a trial court has a ministerial duty to enforce a Rule 11 settlement agreement promotes consistency, fairness, and predictability.

Because we conclude that the trial court had a ministerial duty to sign the parties' Rule 11 agreed judgment, we sustain Issues One through three. Having found that Caballero has established her entitlement to mandamus relief, we conditionally grant her petition for writ of mandamus and order the trial court to vacate the partial summary judgment entered on February 13, 2013 and to enter judgment in accordance with the parties' agreement as to the material terms. We are confident the trial court will comply and the writ will issue only if it does not.

April 23, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, J., and Barajas, C.J. (Senior Judge)
Barajas, C.J. (Senior Judge), sitting by assignment
Rivera, J., dissenting

- 19 -