

# NUMBER 13-18-00648-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF J.P. AND A.P., CHILDREN

### On appeal from the 148th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Chief Justice Contreras

Mother and Father are the divorced parents of J.P and A.P.[1] Appellant Mother appeals the trial court's final amended order in Father's suit to modify the parent-child relationship. By three issues, Mother argues that the trial court erred when it (1) entered an agreed order after she revoked her consent to the parties' Rule 11 agreement, (2) ordered the court appointed counselor and the amicus attorney to determine Mother's

---

[1] To protect the identity of the children, we refer to those involved in the case by aliases, as necessary. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

visitation and access to the children, and (3) granted overbroad injunctions that restrained her speech. We reverse in part, affirm as modified in part, and remand for further proceedings consistent with this memorandum opinion.

## I. BACKGROUND

On April 3, 2017, Mother and Father divorced. The divorce decree appointed Mother as the children's sole managing conservator, appointed Father as possessory conservator with a standard possession order, *see* TEX. FAM. CODE ANN. § 153.312, and ordered Father to pay child support. Shortly thereafter, Mother changed her residence and failed to alert Father or the trial court of her new address. As a result, Father was unable to get visitation and access to the children as mandated by the divorce decree.

On June 19, 2017, Father filed a motion to enforce possession or access to the children and sought attorney's fees and to hold Mother in contempt. Father alleged that Mother had failed to surrender the children to him as ordered by the court. On August 2, 2017, Father filed a petition to modify the parent-child relationship, which he later amended. On September 6, 2017, the trial court signed an order appointing Jeanette Cantu-Bazar as attorney ad litem but changed her role to amicus attorney on October 20, 2017. The trial court also issued an order finding this case to be a high conflict case.[2] On October 24, 2017, the trial court signed an order appointing Rebecca Campbell as the expert therapist for the children.

In his fifth amended motion to enforce possession and access, Father alleged Mother had: failed to surrender the children as required by the court order eleven times;

---

[2] A "high conflict case" is defined as "a suit affecting the parent-child relationship in which the court finds that the parties have demonstrated an unusual degree of: (A) repetitiously resorting to the adjudicative process; (B) anger and distrust; and (C) difficulty in communicating about and cooperating in the care of the children." TEX. FAM. CODE ANN. § 153.601(2).

failed to notify Father or the court of her current residence, phone number, and employer; filed a false report with the Corpus Christi Police Department;[3] and informed Father that he was prohibited from any further visitation with the children unless he consulted with Tamara Robertson, the therapist providing care for the children prior to the trial court's order appointing Campbell. Among other relief, Father requested temporary injunctions preventing Mother from: removing the children from Nueces County, withdrawing the children from the school they were currently enrolled in, hiding the children, making disparaging remarks about Father or Father's family in the presence or within the hearing of the children or on any form of social media, and discussing any litigation concerning the children in the presence or within the hearing of the children or on any form of social media. On June 15, 2018, Cantu-Bazar filed a motion for termination of Robertson's services, arguing that it was imperative to enforce the court's order appointing Campbell.

On June 20, 2018, the trial court held a hearing on Father's motion to enforce possession and access and Cantu-Bazar's motion for termination of Robertson's services. The court found that Mother had violated the orders in the divorce decree and found Mother in contempt of court. The trial court assessed Mother's punishment at 180 days' confinement in the Nueces County Jail with her term to start that day and 120 days of the sentence to be suspended. The trial court also ordered that Campbell serve as the therapist for the children and that Robertson be removed from the case. Finally, the trial court ordered that Mother have a psychological evaluation and awarded Father $5,000 in attorney's fees.

---

[3] The record indicates that Mother filed multiple false reports with the police and the Department of Family and Protective Services alleging the abuse and neglect of the children by Father.

On August 13, 2018, the trial court held a hearing on Father's petition to modify the parent-child relationship where the parties read an agreement into the record. *See* TEX. R. CIV. P. 11. Specifically, the agreement read into the record provided that:

- Father would be the sole managing conservator of the children;

- Father would have exclusive rights to consent to medical care or psychological counseling and to designate the children's primary residence;

- Mother would have visitation and access to the children as recommended by Campbell;

- Father's child support obligation ceased on July 30, 2018, and Father was entitled to reimbursement of any overpayment;

- Each party would be obligated to pay one half of the children's uninsured medical and dental expenses;

- Father would provide health insurance for the children, with no reimbursement from Mother for the premiums;

- Mother would begin paying child support on September 1, 2019, pursuant to the statutory guidelines;

- Mother would be prohibited from contacting the children via telephone, mail, or email unless recommended by Campbell;

- Mother would continue to be enjoined from contacting the Department of Family and Protective Services (the Department) or the police alleging harm by Father or Father's family without first "going through" either Campbell or Cantu-Bazar;

- Mother would submit to a psychological evaluation;

- Father would waive the prior award of $5,000 in attorney's fees;

4

- Mother would be enjoined from interfering with Father's possession of the children in any way, making disparaging remarks about Father or his family in person or on social media, discussing the litigation concerning the children in their presence or on social media, making further reports to police without approval of the trial court, and going within 500 yards of Father's residence or work, Father's parents residence, or the Children's school without the recommendation of Campbell;

- Mother would dismiss all pending motions, including those seeking to hold Father in contempt and the removal of Campbell as the court-appointed therapist; and

- if the court approved, Mother would be released from custody immediately or as soon as possible.

Mother testified that she agreed with the terms dictated into the record and asked the trial court to accept the agreement. The trial court orally announced that it accepted the parties' agreement and that it would sign an order releasing Mother from custody that same day.

That same day, the trial court signed an order releasing Mother from custody. The order provided that Mother "shall comply with the Agreement read into the record and approved by the Court today, and with the Order approving the Agreement to be submitted on or before August 16, 2018."[4]

On August 22, 2018, Father filed a motion to enter judgment. On September 4, 2018, Father filed a motion to terminate Campbell as the therapist for the children

---

[4] The record is silent as to whether an order was submitted on or before August 16, 2018.

5

because "Campbell is not willing to serve as a family therapist in this case [because she] has received threatening and belligerent emails from [Mother] which make further work in this case with the family untenable." On September 10, 2018, Father filed a motion for additional injunctions requesting that Mother be enjoined from any contact with Father, Father's parents, his wife, the children, or his in-laws in any manner. Mother filed a response to Father's motion to enter judgment in which she stated she was withdrawing her consent to the parties' Rule 11 agreement.

On October 25, 2018, the trial court held a hearing on the motion to enter judgment and on Father's motion for additional injunctions. Mother appeared and stated she did not consent to parts of the parties' agreement. Father testified in support of the newly requested injunctions. The trial court signed a final order that incorporated the terms of the parties' agreement read into the record on August 13, 2018, except the order provided that the therapist who would determine Mother's access to the children would be Kate Rodriguez instead of Campbell. The court also granted Father the newly requested injunctions. The court's order specified the duties Father and Mother would have as sole managing conservator and possessory conservator, respectively. The trial court also issued an order appointing Rodriguez as the family therapist for the children because Campbell withdrew from the case. The following day, the trial court signed an amended order correcting the name of the medical professional appointed to perform Mother's psychological evaluation. Mother timely perfected her appeal from that amended final order on November 26, 2018.

On March 21, 2019, Mother filed an emergency motion for stay with this Court alleging that Rodriguez informed Mother in November 2018 of her intent to withdraw from the case, and that Rodriguez's withdrawal was confirmed in February 2019. Mother

6

argued that Rodriguez's withdrawal "rendered it impossible for [her] to comply with the [trial court's] Order's provisions" and, as a result, she had been effectively "entirely stripped of her visitation and access rights." On March 26, 2019, we denied Mother's emergency motion, abated the appeal, and remanded the case to the trial court with instructions to hold an emergency hearing regarding the best interests of the children.

On April 16, 2019, the trial court signed an amended order modifying the October 26, 2019 final judgment and reappointing Cantu-Bazar as amicus attorney for the case. The order further provided that Mother "shall have possession and access to the children as ordered by the Court in the 'Stair Step Visitation for [Mother]' provisions attached hereto as Exhibit A, subject to the recommendations of the amicus attorney . . . ." The trial court also signed an order removing Rodriguez as the therapist and appointing Courtney Rios in her place. We reinstated the appeal on July 1, 2019.

## II. STANDARD OF REVIEW

We review a trial court's order regarding child custody, control, possession, and visitation for an abuse of discretion. *In re H.N.T.*, 367 S.W.3d 901, 903 (Tex. App.—Dallas 2012, no pet.). Likewise, we review the enforcement of Rule 11 agreements and the grants of permanent injunctions for an abuse of discretion. *See Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 659 (Tex. 1996) (per curiam); *Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (permanent injunction); *Chase Manhattan Bank v. Bowles*, 52 S.W.3d 871, 881 (Tex. App.—Waco 2001, no pet.) ("A trial court's ruling regarding a Rule 11 agreement is reviewed for abuse of discretion."). A court abuses its discretion when it acts without reference to any guiding rules or principles, or when it fails to analyze or apply the law correctly. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

7

### III.   RULE 11 AGREEMENT

By her first issue, Mother argues that the trial court's order is: (1) void because she revoked her consent to the parties' agreement before the trial court rendered its judgment; and (2) unenforceable because it did not comply with the terms of the agreement.

### 1. Consent to the Agreement

Rule 11 of the Texas Rules of Civil Procedure states, "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it . . . be made in open court and entered of record."  TEX. R. CIV. P. 11.  A party has the right to revoke his or her consent to a Rule 11 agreement at any time before the rendition of judgment.  *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983); *In re Caballero*, 441 S.W.3d 562, 573 (Tex. App.—El Paso 2014, orig. proceeding); *Patel v. Eagle Pass Pediatric Health Clinic, Inc.*, 985 S.W.2d 249, 251 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.); *see also Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 334 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.) (noting that, where consent to a Rule 11 agreement has been withdrawn, a court may enforce the agreement through a separate breach of contract claim). Withdrawal of consent must be effectively communicated to the trial court.  *In re Caballero*, 441 S.W.3d at 574.

The mere approval of a settlement agreement does not necessarily constitute rendition of judgment.  *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857–58 (Tex. 1995) (per curiam).  Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the clerk.  *Id.*  The rendition of judgment is a present act that decides the issues upon which the ruling is made, and the words

8

used by the trial court must indicate its intent to render judgment at that time, rather than in the future. *Id.*; *see State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015) (quoting *S & A Rest.*, 892 S.W.2d at 858). Thus, the words, "The divorce is granted," constitute a rendition of judgment, *Araujo v. Araujo*, 493 S.W.3d 232, 236 (Tex. App.—San Antonio 2016, no pet.), but the words, "I am going to grant the divorce in this case," do not. *James v. Hubbard*, 21 S.W.3d 558, 561 (Tex. App.—San Antonio 2000, no pet.).

The parties dispute whether the trial court merely accepted the parties' agreement at the hearing on August 13, 2018, or whether it also rendered judgment at that time. At the hearing, the trial court stated:

| | |
|---|---|
| [The Court]: | All right. The Court will approve the agreement of the parties and I will order the release of [Mother]. However, I will suspend the balance of the contempt period and keep it pending for at least two years to ensure your good compliance with the orders of this Court. Any questions? |
| [Mother's counsel]: | No, sir. |
| [Father's counsel]: | No. Thank you, Your Honor. |
| [The Court]: | All right. I'll need an order, but to effect her release immediately I'll draw up a short order that will order her release today and suspend the balance of the commitment. |
| [Father's counsel]: | Yes, Your Honor. I'll submit a written form of order to [Mother's counsel] to approve as to form . . . . |

Here, the trial court did not explicitly say it was rendering or granting the judgment. Nevertheless, by releasing Mother from jail that day and signing an order to that effect, the trial court clearly indicated its intent to render judgment at that time. *See Taylor*, 466 S.W.3d at 788; *S & A Rest.*, 892 S.W.2d at 858; *see also Kelley v. Pirtle*, 826 S.W.2d 653, 654 (Tex. App.—Texarkana 1992, writ denied) ("Entry of judgment is a purely

9

ministerial act by which the trial court's judgment is made of record and preserved.").[5]

We conclude that judgment was rendered on August 13, 2018, both in open court and by written memorandum filed with the clerk. Accordingly, because the trial court rendered judgment on that day, Mother's subsequent attempts to withdraw her consent were futile, and we reject her argument that the trial court's judgment is void because she revoked her consent prior to the rendition of judgment. *See Kelley*, 826 S.W.2d at 654–55.

## 2. Compliance with the Agreement

Mother further argues that the order is unenforceable because it failed to comply with the terms of the parties' agreement as recited at the hearing. *See* TEX. R. CIV. P. 11. Specifically, Mother complains that the order named Rodriguez to determine her access and possession to the children, rather than Campbell. At the time of the hearing on August 13, 2018 when the parties read their agreement into the record, Campbell was the court-appointed therapist; however, she withdrew from the case before the court signed the amended final order on October 26, 2018. Rodriguez was the court appointed therapist for the children at the time the order was signed.

Rule 11 agreements are contracts relating to litigation and are subject to general rules of contract construction. *In re Caballero*, 441 S.W.3d at 574; *see Kanan*, 407 S.W.3d at 327–28. A judgment rendered on a Rule 11 agreement must be "in strict or literal compliance" with the terms recited into the record and cannot remove or add material terms. *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006) (per curiam); *see Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976) (per curiam); *Patel*,

---

[5] The trial court issued findings of fact and conclusions of law in which it stated that it had rendered judgment at the hearing. However, what the trial court believes to be the legal effect of its act is not dispositive on rendition. *In re Marriage of Russell*, 556 S.W.3d 451, 459 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding). Rather, rendition is a present act and the words expressed by the trial court must clearly indicate the intent to render immediate judgment at that time, not in the future. *Id.*; *see S & A Rest. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995) (per curiam).

985 S.W.2d at 252. When the agreed judgment is not rendered in strict compliance with the terms of the agreement, the judgment is unenforceable and must be set aside. *Chisholm*, 209 S.W.3d at 98; *Patel*, 985 S.W.2d at 252; *Nuno v. Pulido*, 946 S.W.2d 448, 451 (Tex. App.—Corpus Christi–Edinburg 1997, no writ). A judgment is not in "strict or literal compliance" with the terms of the agreement if it improperly removes or adds material terms. *See Chisholm*, 209 S.W.3d at 98.

The essential and material terms of an agreement are determined on a case-by-case basis. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). Material and essential terms are those that parties would reasonably regard as "vitally important ingredients" of the bargain. *Id.* "Whether a term forms an essential element of a contract depends primarily upon the intent of the parties." *Kanan*, 407 S.W.3d at 330 (quoting *Domingo v. Mitchell*, 257 S.W.3d 34, 40–41 (Tex. App.—Amarillo 2008, pet. denied)).

We interpret Rule 11 agreements based on the intention of the parties from the language of the entire agreement in light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties with respect to the issues. *Kanan*, 407 S.W.3d at 328; *Garza v. Villareal*, 345 S.W.3d 473, 479 (Tex. App.—San Antonio 2011, pet. denied). In some circumstances, an agreement may be upheld by supplying missing terms. *In re G.D.H.*, 366 S.W.3d 766, 770 (Tex. App.—Amarillo 2012, no pet.); *Kanan*, 407 S.W.3d at 330.

In this case, the surrounding circumstances, the state of the pleadings, the allegations therein, and the attitude of the parties indicated that the purpose of the parties' agreement was to (1) resolve the visitation and custody dispute between the parties and (2) implement a plan for visitation and access for both parents that would be in the best interest of the children. In order to achieve this, the parties agreed to have the court-

ordered therapist for the children determine Mother's visitation and access. There is nothing in the record that indicates that the appointment of Campbell in particular was essential in Mother's consideration of the bargain; on the contrary, Mother attempted to have Campbell removed as the therapist before the trial court found her in contempt. Furthermore, Mother does not explain why the name of the therapist was a material term of the parties' agreement or how it undermined the intent of the parties. *See R.H. v. Smith*, 339 S.W.3d 756, 765 (Tex. App.—Dallas 2011, no pet.). We conclude that the designation of a different health professional (Rodriguez) as the court-ordered therapist responsible for determining Mother's access and visitation was not an improper material alteration to the parties' agreement. *See Fischer*, 479 S.W.3d at 237; *Kanan*, 407 S.W.3d at 330; *McLendon v. McLendon*, 847 S.W.2d 601, 606 (Tex. App.—Dallas 1992, writ denied) ("The law does not require the parties to dictate and agree to all of the provisions to be contained in all of the documents necessary to effectuate the purposes of the agreement; it only requires the parties to reach an agreement as to all material terms of the agreement and prevents the trial court from supplying additional terms to which the parties have not agreed.").

Finally, Mother argues that the order did not comply with the parties' agreement because it delineates Mother's rights as possessory conservator and Father's right as sole managing conservator, which were not read into the record. We disagree. The parties agreed that Father would be the children's sole managing conservator and Mother would be the possessory conservator, and the order provides the specific rights and duties of a sole managing conservator and a possessory conservator, respectively, as provided by the family code. *See* TEX. FAM. CODE ANN. §§ 153.073 (providing the rights of parents at all times), 153.132 (providing the rights and duties of parent appointed sole

12

managing conservator), 153.192 (providing the rights and duties of parent appointed possessory conservator); *see also id.* § 153.071 (providing that the trial court shall specify the rights and duties of a parent appointed a conservator). This did not materially alter or add terms to the parties' agreement; instead, these terms were implicit in the agreement.[6] *See McLendon*, 847 S.W.2d at 606.

### 3. Summary

We overrule Mother's first issue.

### IV.  CONFLICTING ROLES IN ORDER

By her second issue, Mother argues the trial court abused its discretion when it (1) ordered Rodriguez to serve as parenting facilitator and the children's therapist and (2) ordered that Cantu-Bazar serve as parenting facilitator and child custody evaluator despite previously having served as the attorney ad litem for the children.

### 1. Rodriguez

Mother argues that the trial court abused its discretion when it appointed Rodriguez to serve as both parenting facilitator and the children's therapist after Campbell withdrew. Rodriguez has since been removed from the case.

The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding issues that present a "live" controversy at the time of decision. *Love Terminal Partners v. City of Dallas*, 256 S.W.3d 893, 897 (Tex. App.—Dallas 2008, no pet.). An issue becomes moot when (1) it appears that one seeks to obtain a judgment

---

[6] In her brief, Mother also states in a single sentence that the judgment did not comply with the parties' agreement because "[t]he Order also contains the broad injunction prohibiting [Mother] from 'attempting to contact [Father], his parents, his wife, the children subject of this suit, or his in laws in any manner . . . or approaching the person listed above in person, or approaching them in any manner.'" However, Father pleaded and offered evidence in support of this injunction at the hearing on Father's motion to enter judgment, as we discuss below in part V. Therefore, this injunction was not part of the agreement, and the inclusion of it did not materially alter or add terms to it.

13

on some controversy, which in reality does not exist; or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy. *Id.*; *see Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012) ("Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests.").

On October 25, 2018, the trial court appointed Rodriguez "to serve as an expert therapist to recommend visitation with the children and [Mother,] to provided [sic] psychiatric evaluation and counseling to [Mother,]" and to "assist the Court in protecting the best interests of" the children. However, the trial court removed Rodriguez from the case on April 16, 2019. Accordingly, we conclude this argument is moot. *See Heckman*, 369 S.W.3d at 162; *Love Terminal Partners*, 256 S.W.3d at 897.

## 2. Cantu-Bazar

Mother also argues that the trial court erred when, after we abated the appeal, it appointed Cantu-Bazar "to serve as an amicus attorney charged with making recommendations regarding [Mother's] possession and access to the children."

First, Mother argues that Cantu-Bazar was appointed as a "parenting facilitator" despite previously having served as the attorney ad litem for the children.

> A parenting facilitator may not serve in any other professional capacity at any other time with any person who is a party to, or the subject of, the suit in which the person serves as parenting facilitator, or with any member of the family of a party or subject. A person who, before appointment as a parenting facilitator in a suit, served in any other professional capacity with a person who is a party to, or subject of, the suit, or with any member of the family of a party or subject, may not serve as parenting facilitator in a suit involving any family member who is a party to or subject of the suit.

TEX. FAM. CODE ANN. § 153.6102(e). Under the Texas Family Code, a "parenting facilitator" means an impartial third party:

14

(A) who regardless of the title by which the person is designated by the court, performs any function described by [§] 153.6061 in a suit; and

(B) who

> (i) is appointed under this subchapter by the court on its own motion or on a motion or agreement of the parties to assist parties in resolving parenting issues through procedures that are not confidential; and

> (ii) *is not appointed under another statute or a rule of civil procedure.*

*Id.* § 153.601(3) (emphasis added).

In this case, Cantu-Bazar was originally appointed as the attorney ad litem for J.P. and A.P. on September 6, 2017, and subsequently assigned to the role of amicus attorney on October 20, 2017. On April 16, 2019, as a result of Rodriguez withdrawing from the case, the trial court reappointed Cantu-Bazar as the amicus attorney and ordered that Mother have possession and access to the children as recommended by Cantu-Bazar. *See id.* § 107.021. This order amended the trial court's October 26 final order in Father's suit to modify the parent-child relationship.[7]

While the trial court tasked Cantu-Bazar with duties that a "parenting facilitator" performs,[8] the trial court appointed Cantu-Bazar to serve on the case as amicus attorney under § 107.021 of the family code. *See id.* Accordingly, Cantu-Bazar does not satisfy the definition of a "parenting facilitator" because she was appointed under another statute, *see id.* § 153.601(3)(B)(ii), and the exclusion Mother cites in § 153.6102(e) is inapplicable. *See id.* § 153.6102(e).

---

[7] In his brief, Father refers to the order re-appointing Cantu-Bazar as amicus attorney as an "Interim Temporary Orders Pending Appeal." However, the language in the order makes it clear that it was an amendment to the October 26, 2018, final judgment.

[8] Among other duties, the parenting facilitator may be tasked with aiding parties in implementing parenting plans and complying with a court's order regarding conservatorship or possession of and access to the child. *See* TEX. FAM. CODE ANN. §§ 156.606(a); 153.6061(a).

15

Next, Mother argues the trial court erred by appointing Cantu-Bazar as a "child custody evaluator" despite previously having served as the attorney ad litem for the children.

> An individual may not be appointed as a child custody evaluator in a suit if the individual has worked in a professional capacity with a party to the suit, a child who is the subject of the suit, or a member of the party's or child's family who is involved in the suit.

*Id.* § 107.107(e). "Child custody evaluator" means "an individual who conducts a child custody evaluation under this subchapter." *Id.* § 107.101(2).

> "Child custody evaluation" means an evaluative process ordered by a court in a contested case through which information, opinions, *recommendations*, and answers to specific questions asked by the court may be:
>
> (A) made regarding:
>
>> (i) *conservatorship of a child, including the terms and conditions of conservatorship*;
>>
>> (ii) *possession of or access to a child, including the terms and conditions of possession or access*; or
>>
>> (iii) any other issue affecting the best interest of a child; and
>
> (B) made to the court, the parties to the suit, the parties' attorneys, and any other person appointed under this chapter by the court in the suit.

*Id.* § 107.101(1) (emphasis added).

As noted, Cantu-Bazar was originally appointed as the attorney ad litem for J.P. and A.P. and has therefore previously worked in a professional capacity with the children who are subject of the suit. *See id.* § 107.107(e). Further, the trial court's order reappointing Cantu-Bazar tasked her with making recommendations regarding Mother's possession and access to the children. *See id.* § 107.101(1)(A)(2). Accordingly, we conclude the trial court abused its discretion when it subsequently tasked Cantu-Bazar

16

with duties that qualified her as a child custody evaluator.[9]  *See id.* §§ 107.101(1), 107.107(e); *Worford*, 801 S.W.2d at 109.

### 3.  Summary

We sustain Mother's second issue in part, reversing the trial court's order amending the October 26 final judgment to the extent it provides that Mother's access and possession to the children is subject to the recommendations of Cantu-Bazar.  We overrule the remainder of Mother's second issue.

## V.  INJUNCTIONS

By her third issue, Mother argues that the trial court abused its discretion when it enjoined her from contacting the police or the Department regarding Father, Father's family, and the children.  Mother also generally argues that "the injunctions are overly broad, enjoin lawful activity, and lack the sufficient bases required for injunctive relief . . . ."

The trial court's order enjoined Mother from:

1.  Interfering in any way with [Father's] possession of the children or taking or retaining possession of the children, directly or in concert with other persons, except as permitted by order of the Court.

2.  Attempting to communicate with the children in any manner except as recommended by Kate Rodriguez in writing.

3.  Making disparaging remarks regarding [Father] or [Father's] family in the presence or within the hearing of the children or on any form of social media;

4.  Discussing any litigation concerning the children in the presence or within the hearing of the children or on any form of social media; and

---

[9] Father does not dispute that Cantu-Bazar is a "child custody evaluator" as defined by the family code.

17

5. Making further reports to the police and/or [the Department] regarding [Father, the children, or Father's] family members without approval of Kate Rodriguez or Cantu-Bazar.

6. Going about or within 500 yards of the residence or employment locations of [Father], his parents, or the children's schools, without the recommendation of Kate Rodriguez.

7. Attempting to contact [Father], his parents, his wife, the children subject of this suit, or his in-laws in any manner, which includes calling, emailing, texting, writing or approaching the persons listed above, or approaching them in any manner.

With the exception of injunction number seven, all other injunctions granted were agreed upon by Mother and Father and read into the record as part of the parties' Rule 11 agreement. Thus, Mother consented to the first six injunctions and is bound by them. *See* TEX. R. CIV. P. 11; *Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 768 (Tex. 2007) (orig. proceeding) (per curiam); *Kennedy v. Hyde*, 682 S.W.2d 525, 528–30 (Tex. 1984); *Transamerica Corp. v. Braes Woods Condo Ass'n*, 580 S.W.3d 733, 737–38 (Tex. App.— Houston [14th Dist.] 2019, no pet.); *Coale v. Scott*, 331 S.W.3d 829, 831–32 (Tex. App.— Amarillo 2011, no pet.).

As to injunction number seven, to be entitled to a permanent injunction, a party must prove: (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) no adequate remedy at law. *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 350 (Tex. App.—Dallas 2015, no pet.); *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also Grigsby v. Coker*, 904 S.W.2d 619, 620–21 (Tex. 1995); *Davenport v. Garcia*, 834 S.W.2d 4, 8 (Tex. 1992) (noting that Texas's "free speech provision is broader than the First Amendment" and that a gag order in civil judicial proceedings requires a showing of irreparable harm, among other elements).

However, these requirements are not strictly applied in the child custody context. *See In re S.V.*, No. 05-16-00519-CV, __ S.W.3d __, __, 2017 WL 3725981, at *11 (Tex. App.—Dallas Aug. 20, 2017, pet. denied) (noting that "injunctions contained in a SAPCR order need not meet [the traditional injunction] prerequisites"); *King v. Lyons*, 457 S.W.3d 122, 131 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Peck v. Peck*, 172 S.W.3d 26, 35 (Tex. App.—Dallas 2005, pet. denied); *see, e.g.*, *Messier v. Messier*, 389 S.W.3d 904, 908 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *O'Connor v. O'Connor*, 245 S.W.3d 511, 518 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *MacCallum v. MacCallum*, 801 S.W.2d 579, 586–87 (Tex. App.—Corpus Christi–Edinburg 1990, writ denied) (noting that, in child custody cases, the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings). Rather,

> a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all *relevant* custody, control, possession[,] and visitation matters involving the child. The courts are given wide discretion in such proceedings. Technical rules of practice and pleadings are of little importance in determining issues concerning the custody of children.

*Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967) (internal citations omitted) (emphasis added); *see also In re B.J.H.-T.*, No. 12-09-00157-CV, 2011 WL 721511, at *2 (Tex. App.—Tyler Mar. 2, 2011, pet. denied) (mem. op.) (noting that, "in cases affecting the parent-child relationship, . . . the best interest of the child is always the overriding consideration . . . ."). Trial courts are given wide latitude in determining the best interest of a minor child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Scoggins v. Trevino*, 200 S.W.3d 832, 836 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.).

Here, after the parties read their Rule 11 agreement into the record but before the trial court signed the final order, Father filed a motion for additional injunctions requesting

the relief granted in injunction number seven.  At the hearing on his motion to enter judgment, Father brought his motion for the additional injunction to the trial court's attention and presented additional evidence for his request.

Father testified he was requesting this injunction because Mother had repeatedly slandered Father, had unpleasantries with Father's wife, and caused emotional turmoil to his family.    There was also evidence before the trial court that Mother coached the children to support Mother's claim of sexual abuse by Father's stepson and physical abuse at the hands of Father and had also attempted to alienate the children from Father.[10]  Father testified Mother had made allegations to police officers that the paternal grandmother was not feeding the children, that the paternal grandfather had sexually abused the children, and that the Department had investigated at least four allegations against Father and his family and that none were found to have merit.  Father explained that Mother would call multiple times a day when he had possession of the children and that it was disruptive to their time together.  Furthermore, the trial court had previously issued an order finding this to be a high conflict case, *see* TEX. FAM. CODE ANN. § 153.601(2), and the trial court found that Mother had violated its orders numerous times. According to Father, there was no reason for Mother to be able to contact him or any of the other individuals listed and that it would be in the children's best interest if Mother and Father communicated through their attorneys.

---

[10] Upon Mother's request, the trial court issued findings of fact and conclusions of law regarding the amended final judgment.  The trial court's findings of fact provided that Mother "violated numerous court-ordered provisions of the divorce after such divorce.  This includes failure to permit visitation, making reports to police and [the Department] in violation of temporary orders, failing to attend court ordered therapy, and other violations as shown at the June [20], 2018, hearing."  The trial court's conclusions of law provided that the "judgment is in the best interest of the children."  The findings of fact are supported by the record.

20

Due to Mother's behavior, the nature of the case, and the negative impact caused by Mother's communications with the listed individuals, the trial court could have concluded that it was in the best interest of the children to enjoin Mother from the activities listed in injunction number seven. *See Gillespie*, 644 S.W.2d at 451; *O'Connor*, 245 S.W.3d at 518; *McCallum*, 801 S.W.2d at 587. Accordingly, the trial court had a basis for granting Father's motion for additional injunctions. *See Gillespie*, 644 S.W.2d at 451; *Peck*, 172 S.W.3d at 35–36; *McCallum*, 801 S.W.2d at 587; *O'Connor*, 245 S.W.3d at 518; *see also In re C.E.C.*, No. 05-17-01482-CV, 2018 WL 3062454, at *8–9 (Tex. App.—Dallas June 21, 2018, no pet.) (mem. op.); *In re B.J.H.-T.*, 2011 WL 721511, at *2; *In re B.J.W.S.*, No. 2010 WL 4396291, at *9 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet.) (mem. op.).

Nevertheless, an injunction must not be so broad as to enjoin a defendant from activities that are a lawful and proper exercise of his or her rights. *Computek Comput. & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 221 (Tex. App.—Dallas 2005, no pet.). On the other hand, an injunction should be broad enough to prevent a repetition of the evil sought to be corrected. *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956). Where a party's acts are divisible, and some acts are permissible and some are not, an injunction should not issue to restrain actions that are legal or about which there is no asserted complaint. *Computek Comput.*, 156 S.W.3d at 221. Thus, the entry of an injunction that enjoins lawful as well as unlawful acts may constitute an abuse of discretion. *Id.*; *see also Robles v. Mann*, No. 13-14-00211-CV, 2016 WL 1613316, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 21, 2016, no pet.) (mem. op.).

21

Here, injunction number seven prevented Mother from communicating with the children in "any manner," despite the order also providing that Mother was to contact the children and have access and possession of the children as provided by the court-appointed therapist. Accordingly, the injunction was overly broad because it enjoined Mother from lawful acts. *See Computek Comput.*, 156 S.W.3d at 221. Thus, we conclude the trial court abused its discretion when it enjoined Mother from communicating with the children in "any manner." *See id.*

We sustain Mother's third issue in part, concluding that injunction number seven is overly broad to the extent it enjoined Mother from contacting the children in any manner. We overrule the remainder of Mother's third issue.

## VI. CONCLUSION

We reverse the trial court's order amending the final judgment to the extent it provides that Mother's access and possession to the children be subject to the recommendations of Cantu-Bazar. We modify injunction number seven in the trial court's final amended order to provide that Mother is enjoined from

> Attempting to contact [Father], his parents, his wife, the children subject of this suit, or his in-laws in any manner, which includes calling, emailing, texting, writing or approaching the persons listed above, or approaching them in any manner, except Mother may contact the children as determined by the court-appointed therapist.

We affirm the remainder of the judgment as modified and remand for further proceedings consistent with this memorandum opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed the 9th
day of January, 2020.

22